IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA COUNTY TITLE & ESCROW SERVICES, INC.,** an Oregon corporation, | Civil Case No. 09-1463-KI |
| Plaintiff, | OPINION AND ORDER |
| vs. | |
| **SAFECO INSURANCE COMPANY OF AMERICA,** a Washington corporation, **AMERICAN STATES INSURANCE COMPANY**, an Indiana corporation, **FIRST NATIONAL INSURANCE COMPANY OF AMERICA**, a Washington corporation, | |
| Defendants. | |

      Scott J. Kaplan
      Stoel Rives LLP
      900 SW Fifth Avenue, Suite 2600
      Portland, Oregon 97204

           Attorney for Plaintiff

Page 1 - OPINION AND ORDER

David A. Hytowitz
Law Offices of Andersen & Nyburg
P. O. Box 4400
Portland, Oregon 97208-4400

    Attorney for Defendants

KING, Judge:

Columbia County Title & Escrow Service ("Columbia Title") brings this insurance coverage case against three insurers concerning payment of benefits under Columbia Title's commercial crime coverage insurance policy. Columbia Title considered the payment grossly inadequate to cover the loss caused by one of its employees who embezzled funds. Before the court is Defendants' Motion for Summary Judgment and Alternative Motion for Dismissal (#13). For the reasons below, I grant the motions in part and dismiss the estoppel defense but will allow the waiver defense to proceed to trial.

## FACTS

Columbia Title purchased a commercial crime coverage insurance policy ("Policy") from defendant American States Insurance Company ("American States"). The Policy states, in part:

    7. Legal Action Against Us: You may not bring any legal action against us involving loss:

        a. Unless you have complied with the terms of this insurance; and

        b. Until 90 days after you have filed proof of loss with us; and

        c. Unless brought within 2 years from the date you discover the loss.

Compl. Ex. 1, at 4.

Ron Bridge, Chairman of the Board of Columbia Title, hired Diane Mills as President of Columbia Title. In October 2004, Bridge found out that Mills converted over $300,000 of

Columbia Title's funds to her benefit, including by putting her husband, Michael Sage, and her mother on the payroll, although they performed little or no work for the company. In June 2006, Columbia Title sued Mills and Sage in Columbia County Circuit Court for conversion, fraud, and several other torts. Columbia Title pursued the case until Mills filed for bankruptcy in 2007. The company then made a claim against Mills' bankruptcy estate.

Columbia Title reported the alleged loss to American States in September 2007. On October 8, 2007, American States sent a letter acknowledging the possible loss and requesting information. The letter also stated:

> Neither this letter, nor any investigation conducted by us is intended as, nor should it be construed as a waiver of any terms, conditions, limitations, or provisions of the above captioned policy of insurance, a waiver of any of your obligations under the policy, a waiver of any defenses now or hereafter available to American States Insurance Company or denial of liability. Any action we have taken in the past, now take, or take in the future is not intended as, nor should it be deemed a waiver of any of our rights or your obligations under the policy.

Putzek Decl. Ex. 2, at 2. American States sent letters containing the same reservation of rights on December 5, 2007 and January 15, 2008.

On February 5, 2008, American States wrote Columbia Title's lawyer, Monty Cobb. The letter stated the loss date of October 1, 2004 and explained that the claim may be subject to limits and exclusions. It quoted several policy provisions, including the limitations on bringing suit and the reservation of rights quoted above. Finally, the letter requested a significant amount of documentation.

On February 14, 2008, Cobb responded with information about his client's claim, draft Proofs of Loss listing October 2004 as the date the loss was discovered, and the status of some of the requested documents.

On February 23, 2008, American States' investigator, Studler, Doyle & Company ("Studler"), wrote Cobb's office to confirm a meeting. The letter reserved all rights and warned that it should not be construed as a waiver of any policy provisions, defenses or limitations.

On March 10, 2008, Columbia Title filed notarized Proofs of Loss with American States, executed on February 27, 2008, which stated that the loss was discovered in October 2004.

On March 13, 2008, American States wrote Cobb to acknowledge receipt of the documentation, to quote in full several policy provisions including the suit limitation at issue here, to reserve all rights, and to warn that the letter and investigation should not be construed as a waiver. The letter also stated, "At this time we are unable accept nor reject [sic] the Proof[s] of Loss as they were submitted; final determination will be made once all of the documentation has been reviewed." Bridge Decl. Ex. 6, at 1.

On March 14, 2008, Cobb sent American States digital copies of numerous documents the insurer previously requested, a spreadsheet of the embezzled funds, and answers to numerous questions about Mills and Sage. Cobb also told American States:[1]

> On behalf of your insured, I hereby tender the prosecution of those actions to Safeco/American States for pursuit in subrogation. It is our intention to abandon those actions 30 days from the date of this letter if this tender is not accepted. During this 30 day period, we will take only such action as is necessary to preserve the actions.

Id. ¶ 10.

On March 21, 2008, Studler wrote Cobb to sum up some of the facts surrounding the loss, including that Columbia Title discovered the loss in October 2004 and notified its insurance

---

[1] The Bridge Declaration did not include the enclosures with the exhibit so the referenced attached letter is not in the evidentiary record. The quote is from the declaration itself.

agent of a potential loss shortly thereafter. Studler requested additional documentation and information, reserved all rights, and warned that the letter and investigation should not be construed as a waiver.

On March 24, 2008, Cobb wrote American States to remind the insurer of the correspondence tendering the cases to it and enclosing a scheduling order from the adversary proceeding in the bankruptcy court.

On March 26, 2008, Cobb wrote American States:

> On March 14, 2008, we tendered (copy attached), in subrogation to American States/Safeco, your insured's claims and pending litigation against Diane Mills, including the adversary proceeding and proof of claim filed in Ms. Mills' bankruptcy. Attached to this letter is Ms. Mills' response to a creditor's motion for relief from stay. It appears from this response, that there could be enough money in the bankruptcy to pay some of your insured's claim and therefore some of your subrogation. I reiterate that we are taking only such action in the pending litigation as is necessary to preserve it for 30 days from March 14, 2008.

Id. Ex. 10.

Cobb wrote American States on March 28 and April 10, 2008 to convey documents from the bankruptcy court and to remind the insurer that Columbia Title was only taking action to preserve the litigation until 30 days from March 14, 2008.

On April 17, 2008, Cobb wrote American States to convey another document from the bankruptcy court and to inform the insurer that his client was taking no further action to preserve the litigation, pursuant to the March 14, 2008 tender demand.

On April 23, 2008, Cobb wrote American States to inform it that Mills' bankruptcy petition was dismissed, which would allow the state court action to be reinstated. Cobb again told the insurer that his client was taking no further action to preserve the litigation. According

to Bridge, he would have instructed Cobb to continue prosecuting the action against Mills and Sage if he knew that American States was going to refuse to pay the claim in its entirety due to the deadlines in the policy.

American States never responded to Columbia Title's tender of subrogation. Studler wrote Cobb on April 29, May 30, June 17, and June 26, 2008 to request documentation. Each letter reserved all rights and warned that the letter and investigation should not be construed as a waiver.

In September 2008, Columbia Title asked the bankruptcy court to dismiss its adversary proceeding in the Mills bankruptcy case. Cobb states that the company relied on American States' representations that it would address the claim on the merits.

On November 12, 2008, American States wrote Cobb:

> Based [on] the finding of Studler, Doyle and Company LLC for the loss period March 1995 to October 31, 2004 they have determined a net financial benefit totaling $8,574.87 by this employee. This amount includes Nextel charges, American Express and Auto Allowance and expenses. The remaining charges have not been documented to show a financial gain by the employee.
>
> Attached for your review is a summary of this loss. If you provide us with additional documentation for the remaining portion of the claim we will review this settlement again.
>
> Under separate cover I will be forwarding this settlement check to your office. This payment should arrive within the next seven to ten business days.

Id. Ex. 19. This letter included no reservation of rights and did not warn against construing the letter as a waiver of any policy provision, defense, or limitation.

On January 22, 2009, Cobb wrote American States to explain why the payment was insufficient.

In May 2009, the state court dismissed Columbia Title's case against Mills and Sage for lack of prosecution. Cobb states that the company relied on American States' representations that it would address the claim on the merits.

On October 8, 2009, American States wrote Bridge:

> We are in receipt of Studler, Doyle & Company's evaluation of the loss you claimed. Upon review of their assessment, they have concluded that your loss under the Employee Dishonesty coverage totals $13,228.05. You have a $1,000 deductible on the policy, thus the total amount of $12,228.05 is payable to you. Upon review of the file, you have previously been paid the sum of $8,574.87. The remaining amount due is $3,653.18. We have now tendered this amount under separate cover.

Id. Ex. 21. This letter included no reservation of rights and did not warn against construing the letter as a waiver of any policy provision, defense, or limitation.

Columbia Title incurred over $10,000 in attorney fees for Cobb to pursue the insurance claim. Neither American States nor its investigators told Cobb that it would deny any part of the claim based on the suit limitation provision.

Columbia Title brought this case against American States on December 11, 2009.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

**DISCUSSION**

I. Proper Parties

Although Columbia Title sued three insurers who were possibly associated with the Policy, defendant ASI stepped forward to agree it was the insurer who had underwritten the Policy and the other two defendants were not proper parties. Based on this representation, Columbia Title agrees to dismiss its claim against defendants Safeco Insurance Company of America and First National Insurance Company of America.

II. Policy Limitations

American States relies on the Policy's general exclusion which states that the insured may not bring any legal action against the insurer "[u]nless brought within 2 years from the date you discover the loss." Compl. Ex. 1, at 4. American States notes that Columbia Title stated in notarized Proofs of Loss that it discovered the loss in October 2004. Columbia Title filed this action on December 11, 2009, more than five years after discovery of the loss. Thus, American States maintains that the action is untimely under the Policy's limitation and should be dismissed.

Columbia Title relies on the defenses of waiver, estoppel, and the application of ORS 12.230.

A suit limitation provision in an insurance policy is a contract condition and not a statute of limitations. Herman v. Valley Ins. Co., 145 Or. App. 124, 130, 928 P.2d 985 (1996). An insurer may waive a suit limitation by its conduct because the limitation is not a condition of

Page 8 - OPINION AND ORDER

forfeiture, namely when coverage is provided by a policy but may be forfeited by acts of the insured. Wright v. State Farm Mut. Auto. Ins. Co., 223 Or. App. 357, 368-71, 196 P.3d 1000 (2008) (insurer can waive a two-year suit limitation provision in a policy providing UIM benefits).

"Under the proper circumstances, an insurer may be estopped from asserting a suit limitation provision as a defense to liability on an insurance policy, whether or not the provision is characterized as a condition of forfeiture." Herman, 145 Or. App. at 133 (conditions of forfeiture are subject to estoppel).

    A.    Waiver

Columbia Title claims that American States' conduct–in paying a portion of the claim without reservation, inviting Columbia Title to submit additional documentation, and causing Columbia Title to give up its rights to recover from third parties–results in a waiver of American States' right to rely on the limitation for bringing a legal action. Columbia Title notes that American States had full knowledge of the October 2004 date of loss when it paid the claim in part in 2008 and 2009 and thus intentionally waived the limitation period.

American States maintains that the collective body of communications on its behalf undeniably established that the insurer intended to reserve its right to assert the limitations period. In particular, American States notes language contained in many of the communications which references future conduct: "Any action we . . . take in the future is not intended as, nor should it be deemed a waiver of any of our rights or your obligations under the policy." Putzek Decl. Ex. 2, at 2 (emphasis added). American States thus claims that the absence of reservation

of rights language at the two moments of payment is not probative to prove the insurer waived its right to rely on the limitation.

"Waiver is the intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power." Wright, 223 Or. App. at 367. Wright found a factual issue on whether an insurer waived a limitation period when its claims representative sent a letter identifying the date of loss, stating that the insurer determined that plaintiff did have coverage under the policy for a UIM claim, and stating that the "only remaining issues are liability and damages due." Id. at 371-72. Three months later, the insurer first asserted that the policy's limitation period precluded recovery. Id. at 368.

I agree with American States that the reservations of rights contained in the vast majority of its communications make it hard to argue that the insurer intended to waive the suit limitation provision. When American States made two payments without any form of reservation of rights, however, it acted similarly to the insurer in Wright which stated that plaintiff had coverage and the only remaining issues were liability and damages due. Payment of part of the claim is a significant act which a jury could interpret as a concession of coverage, particularly with no reservation of rights in the same letter. I conclude that Columbia Title has shown a factual issue precluding summary judgment on the waiver defense.

    B.    Estoppel

Columbia Title alternatively argues that American States not only waived the limitation period but acted in a manner that estops the insurer from relying on the limitation. Columbia Title contends that American States made a false representation by repeatedly telling Cobb that it was processing the claim, along with requesting additional information, without stating it would

deny any aspect of the claim.  Columbia Title contends that there are fact issues on whether it relied on the insurer's conduct in giving up subrogation rights against Mills and Sage.  To show its reliance, Columbia Title points to tendering the claims and incurring attorney fees by continuing to have its attorney provide information to the claims adjuster.

American States argues that it included express reservations of rights in nearly every written communication to Columbia Title and Cobb.  It contends that Columbia Title abandoned its action against Mills and Sage on its own initiative, in the face of the repeated reservations of rights to deny coverage.  Additionally, American States notes that it never requested tender of subrogation rights, that the litigation of the particular claims falls outside the insurer's duties under the Policy, and that Columbia Title tendered the claims prior to receiving either payment.

The elements of estoppel are:  (1) a false representation; (2) made with knowledge of the facts; (3) made when the other party was ignorant of the truth; (4) made with the intention that it should be acted upon by the other party; and (5) inducing the other party to act upon it.  Herman, 145 Or. App. at 134.  There must be a justifiable and reasonable reliance by the party seeking to invoke estoppel.  Id. at 133.

In Herman, there had been several communications between the two resulting in the insurer rejecting the insured's proof of loss form twice.  A week before the suit limitation provision ran, the insurer warned the insured that it would not waive the time limitation.  Id. at 126-27.  The court granted summary judgment dismissing the insured's estoppel defense after concluding no juror could find that the insured made any false representations or affirmatively induced the insured to delay in bringing the action.  Id. at 134.

Here, Columbia Title argues that American States made a misrepresentation when it repeatedly stated that it was processing the claim without also stating that it would deny any aspect of the claim. That alleged misrepresentation is not a clear enough statement to support an estoppel defense. In contrast, when the insured asked the insurer in <u>Great Am. Ins. Co. of New York v. Jackson Cnty. Sch.</u> whether there were time limits for designing the replacement school and getting construction estimates, the insurer stated, "as long as the School District maintained open communications with Great American and the parties were making continuous forward progress, Great American would impose no time restrictions on the School District's claim for replacement cost." <u>Great Am. Ins. Co. of New York v. Jackson Cnty. Sch.</u>, 478 F. Supp.2d 1227, 1232-33 (D. Or. 2007) (court did not grant summary judgment on estoppel defense because of factual issues)

As in <u>Herman</u>, I conclude no jury could find that American States made a misrepresentation, and I grant summary judgment dismissing the estoppel defense.

C. <u>ORS 12.230</u>

Columbia Title argues that American States made partial payments which were accepted by Columbia Title as such, and that the insurer's claims adjustor promised to review the settlement again if Columbia Title provided additional documentation. After Columbia Title provided more documentation, American States partially performed its promise to review the settlement by paying another portion of the claim. Thus, Columbia Title argues that a jury could find that the insurer promised in writing in 2008 and 2009 to pay sums Columbia Title could document, creating a new or continuing contract within the meaning of ORS 12.230.

The statute states:

> Acknowledgment or promise taking contract case out of statute; effect of payment. No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing, signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest.

Columbia Title provides no authority applying ORS 12.230 to a suit limitation provision in an insurance policy and I am aware of none. I am unpersuaded that the statue controls the situation. As stated above, a suit limitation provision in an insurance policy is a contract condition and not a statute of limitations. Herman, 145 Or. App. at 130. The statute refers to taking a case "out of the operation of this chapter." ORS 12.230. ORS Chapter 12 is entitled Limitations of Actions and Suits. Most of the cases I reviewed concerned collecting promissory notes. See Culver v. Andres, 26 Or. App. 809, 554 P.2d 541 (1976) (attempting to collect a note from an estate when the decedent made three payments over 13 years). I conclude that ORS 12.230 has no application to this case and grant summary judgment against its use as a defense.

## CONCLUSION

Defendants' Motion for Summary Judgment and Alternative Motion for Dismissal (#13) are granted in part. Defendants Safeco Insurance Company of America and First National Insurance Company of America are dismissed with prejudice.

IT IS SO ORDERED.

Dated this    22nd    day of October, 2010.

    /s/ Garr M. King
Garr M. King
United States District Judge